UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
ANTOINETTER GRANT,

                                                    Civil Action No.
                              Plaintiff,
                                                    COMPLAINT

                    -against-

  NYU LANGONE HOSPITALS,

                              Defendant.
------------------------------------------------------------------------X

      Plaintiff Antoinette Grant, by her attorneys, Katz Melinger PLLC, complaining of the

Defendant, NYU Langone Hospitals, respectfully alleges as follows:

### I. Nature of Action, Jurisdiction, and Venue

      1.    This is an action seeking equitable and legal relief for Defendant's violations of

the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*. ("ADA"); Title VII of the Civil

Rights Act, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); the New York State Human Rights Law,

Executive Law § 296, *et seq.* ("NYSHRL"); and the New York City Human Rights Law, Title 8

of the NYC Administrative Code, *et seq.* ("NYCHRL").

      2.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331 in that this is an action

involving federal questions arising under the ADA and Title VII.

      3.    This Court has supplemental jurisdiction over the claims arising under the

NYSHRL and NYCHRL pursuant to 28 U.S.C. § 1367 in that the state and city law claims are so

closely related to Plaintiff's ADA and Title VII claims as to form the same case or controversy

under Article III of the United States Constitution.

      4.    Venue is proper in this judicial district under 28 U.S.C. § 1391, as a substantial

part of the events and omissions giving rise to the claims occurred in this judicial district, and

Defendant conducts business through its employees, including Plaintiff, within this judicial district.

5.      Plaintiff filed a charge with the Equal Employment Opportunity Commission and received a Notice of Right to Sue dated January 27, 2025 (Exhibit 1).

## II. Parties

6.      Plaintiff is an individual residing in the State of New York.

7.      At all relevant times, Plaintiff was a covered employee of Defendant as defined by the ADA, Title VII, NYSHRL, and NYCHRL.

8.      NYU Langone Hospitals (hereinafter "NYU" or "the Hospital") is a domestic not-for-profit corporation with its principal place of business located at 550 First Avenue, New York, NY 10016.

9.      At all relevant times, Defendant was a covered employer within the meaning of the ADA, Title VII, NYCHRL, and NYSHRL, and at all relevant times, employed Plaintiff.

10.      Defendant is subject to suit under the statutes alleged above.

## III. Factual Allegations

11.      Plaintiff is a 55-year-old Black woman who has been a devoted Labor and Delivery nurse for over thirty (30) years.

12.      Defendant employed Plaintiff from in or around February 2018 until on or around February 16, 2024.

13.      From in or around February 2018 until in or around June 2018, Plaintiff worked as a full-time traveling nurse for Defendant in the Labor and Delivery Department.

14.      From in or around July 2018 until in or around 2019, Plaintiff worked as a full-time nurse clinician in the Labor and Delivery Department.

2

15.     Staring in or around 2019, Plaintiff worked as a full-time nurse clinician in the High-Risk Antepartum Unit while continuing to work three to five shifts per month in the Labor and Delivery Department.

16.     In or around the spring of 2019, Plaintiff, became involved with the Black Mothers Matter Committee (hereinafter "BMMC"), a group formed by nurses to identify and rectify disparities in outcomes for Black and Brown patients in the Hospital's Labor and Delivery department.

17.     The BMMC had identified increased negative outcomes for women of color at the Hospital, including increased C-Section rates, increased fetal and maternal morbidity rates, and other alarming issues.

18.     The BMMC presented their findings to the Hospital's leadership, and in response the Hospital's leadership indicated they would not prioritize addressing these findings because women of color comprise only six percent (6%) of the population that delivers in the Hospital.

19.     In or around 2020, Plaintiff initiated and launched a program known as the Antepartum Wellness Program ("AWP") with the goal of improving the model of care for high-risk mothers and fetuses.

20.     While working with the patients enrolled in the AWP as well as with BMMC, Plaintiff observed continued disparities of care between white patients and black, Indigenous, and people of color ("BIPOC") patients.

21.     Nevertheless, Lauraine Spano, VP of nursing informed the BMMC that the group should support all women, not just BIPOC women.

22.     On or around August 11, 2021, Plaintiff underwent knee replacement surgery.

3

23.    Plaintiff applied for short-term disability leave, which she then converted to long-term disability leave after facing complications from the surgery.

24.    In or around January 2022, a program called the Holistic Black Birth Program (hereinafter "HBBP") was initiated by the members of the BMMC.

25.    In or around February or March 2022, Plaintiff submitted an ADA accommodation request for remote work to Human Resources.

26.    Plaintiff's disability leave lasted until in or around April 2022, when Plaintiff returned to work on a remote part-time basis.

27.    Upon Plaintiff's return to work, she was named the program navigator for the HBBP by Joy Pavsic, Senior Director of Women's Health.

28.    In or around the same time Plaintiff returned to work, the number of HBBP patients increased from ten to approximately forty.

29.    In or around May 2022, Ms. Pavsic appointed Plaintiff as the second holistic-care partner for HBBP.

30.    Plaintiff's job duties during this time included, but were not limited to, reviewing charts, speaking with patients, making referrals, assisting in support groups, and participating in meetings and presentations related to HBBP.

31.    Plaintiff was able to perform the above essential functions of her job while working remotely.

32.    In or around December 2022, Plaintiff was diagnosed with breast cancer.

33.    Due to her cancer diagnosis, Plaintiff initially applied for short-term disability leave, however after consulting with her doctors, Plaintiff decided to continue working remotely and withdrew her leave request.

34.    In or around February or March 2023, Ms. Pavsic informed Plaintiff that her paperwork for remote work needed to be updated.

35.    Plaintiff informed Ms. Pavsic that she wished to transition to a hybrid schedule that would permit her to work at the Hospital as well as remotely.

36.    In or around April 2023, Regine Grice, Manager of Human Resources, informed Plaintiff that the Labor and Delivery Department denied Plaintiff's extension of her remote work accommodation and that Plaintiff was required to return to work in person.

37.    In or around May 2023, Plaintiff submitted an updated remote or hybrid work accommodation request to Ms. Grice due to her suppressed immune system caused by her cancer treatment.

38.    Plaintiff's oncologist supported Plaintiff's request.

39.    Nonetheless, Ms. Grice informed Plaintiff that the Hospital had denied Plaintiff's request for an accommodation, stating that Plaintiff was required to return to work in person on June 19, 2023.

40.    On or around June 1, 2023, Plaintiff sent her orthopedic doctor's notes to Ms. Grice to support her accommodation request to continue working hybrid or remotely instead of returning to work in person on June 19, 2023.

41.    Plaintiff's doctor's notes stated in part that she could not stand for long periods of time and that her work hours should be limited.

42.    On June 19, 2023, Plaintiff reported to work at the Hospital in person, as her accommodation request had been denied.

43.     Although the Hospital had informed Plaintiff that she was needed on site in order to work as a bedside nurse, on or around June 19, 2023 Ms. Pavsic instead directed Plaintiff to perform audits in a small office space shared with two or three other nurses.

44.     Plaintiff's job duties during this time included, but were not limited to, chart audits, monitoring nursing staff notes, and reviewing maternal supply needs. None of these duties necessitated Plaintiff's on-site presence, yet the Hospital required her to work in person.

45.     The office to which Plaintiff was assigned did not have a ventilation system or windows, Plaintiff's co-workers did not wear masks, and the surfaces of the room were so dirty that Plaintiff had to clean the areas on a daily basis.

46.     In or around July 2023, Plaintiff's health declined due to the fact that her cancer treatments drastically decreased her white blood cell count and that the working conditions of the office were not suitable given Plaintiff's deteriorated immune system.

47.     Due to the combination of Plaintiff's immune system and the working conditions of the office, Plaintiff's fingers became infected and her nails needed to be removed.

48.     As a result of Plaintiff's infection, on or around August 2023, Plaintiff began short-term disability leave.

49.     On or around September 6, 2023, Plaintiff underwent surgery for a double mastectomy.

50.     From in or around September 2023 through December 2023, Plaintiff underwent additional surgeries and started new cancer treatments.

51.     In or around the end of December 2023, Plaintiff notified Ms. Pavsic and Nurse Manager Carri-Anne Gaglione that she wished to return to work on January 3, 2024.

52.     On January 1, 2024, Plaintiff's doctors cleared her to return to work.

53.     On January 2, 2024, Plaintiff emailed Ms. Pavsic and Nurse Manager Carri-Anne Gaglione to inform them that she was able to return to work.

54.     Ms. Gaglione responded to Plaintiff asking her to come to the Hospital but directing her to not stay longer than two hours.

55.     On January 3, 2024, Plaintiff reported to the Hospital prepared to work, but she was immediately questioned by Ms. Gaglione as to whether her leave was over and whether she should even be at the Hospital.

56.     After two hours of discussions, Plaintiff was directed by Ms. Gaglione to leave.

57.     On January 4, 2024, Plaintiff returned to the Hospital to further discuss her fulltime schedule with Ms. Gaglione.

58.     Plaintiff assured Ms. Gaglione that she was ready and able to return to work, however Ms. Gaglione required Plaintiff to prove through documents from Plaintiff's doctor that it was safe for her to return to work and interact with patients.

59.     On January 5, 2024, after Plaintiff's conversation with Ms. Gaglione, Ms. Gaglione sent an email to Plaintiff, copying the director of Human Resources, Austin Bender, prohibiting Plaintiff from returning to work.

60.     Plaintiff responded to the email with a letter from her doctor that stated that it was safe for Plaintiff to return to work and to interact with patients.

61.     On or around January 8, 2024, in response to the pushback she was receiving from the Labor and Delivery Department leadership, Plaintiff applied for other positions at the Hospital.

62.     On January 18, 2024, Plaintiff emailed Mr. Bender seeking an update on the status of her employment, as she had not received any communications from the Labor and Delivery leadership nor the Human Resources department.

63.     Mr. Bender responded to Plaintiff asking if she was seeking an accommodation, which Plaintiff had not sought.

64.     In or around late January 2024, Plaintiff both contracted COVID-19 and received second degree burns from her cancer treatment.

65.     Due to the COVID-19 infection and second degree burns, Plaintiff took three weeks of short-term disability leave, during which time Plaintiff was notified by Ms. Gaglione that her short-term leave had been converted to long-term disability leave.

66.     On February 9, 2024, Ms. Gaglione sent an email to Plaintiff informing her that her short-term disability leave had been exhausted as of February 2, 2024.

67.     Ms. Gaglione's email further informed Plaintiff that Plaintiff needed to provide medical documentation in connection with her ability to return to work, with or without a reasonable accommodation, and Plaintiff's anticipated return to work date.

68.     Also on February 9, 2024, Plaintiff emailed Mr. Bender inquiring about one of the other positions to which she had applied.

69.     On February 11 and 12 2024, Plaintiff sent Mr. Bender accommodation request forms and doctors' notes stating that Plaintiff would be able to return to work at the end of February 2024 with or without remote work accommodations.

70.     On February 13, 2024, Mr. Bender sent Plaintiff's accommodation request forms to the Hospital's Employee Relations.

71.     On February 16, 2024, the Hospital terminated Plaintiff's employment.

72.    On February 23, 2024, Plaintiff spoke to Mr. Bender regarding her termination and was informed that her position required her to be in person.

73.    Plaintiff's position was filled by a *per diem* nurse who worked remotely part-time.

### AS AND FOR A FIRST CAUSE OF ACTION
*(Americans with Disabilities Act of 1990, 42 U.S.C § 12101 et seq.)*
(Disability Discrimination and Failure to Accommodate)

74.    Plaintiff repeats and realleges all prior allegations.

75.    The ADA prohibits covered employers from discriminating against a qualified employee with a disability.

76.    The ADA also requires a covered employer to engage in an interactive process with employees with disabilities and provide such employees with reasonable accommodations.

77.    Plaintiff is a qualified individual with disabilities as defined under the ADA.

78.    At all relevant times herein, Defendant had notice and was aware of Plaintiff's disabilities.

79.    Plaintiff was capable of performing the essential functions of her job with reasonable accommodations and eventually without a reasonable accommodation.

80.    Defendant failed to engage in a good faith interactive process with Plaintiff, denied her reasonable accommodations, and discriminated against Plaintiff because of her known disabilities, including but not limited to terminating her employment based on her disability.

81.    Defendant subjected Plaintiff to adverse employment actions to which non-disabled employees were not subjected.

82.    As a direct and proximate result of Defendant's discrimination against Plaintiff and failure to provide reasonable accommodations, Plaintiff has suffered and continues to suffer substantial losses, including loss of past and future earnings and other employment benefits.

83.     As a direct and proximate result of Defendant's discrimination against Plaintiff and failure to provide reasonable accommodations, Plaintiff has suffered emotional distress, pain, and suffering.

84.     Judgment should be entered in favor of Plaintiff and against Defendant on the First Cause of Action for all compensatory, emotional, liquidated, and punitive damages, if applicable, along with lost pay, front pay, reasonable attorneys' fees, the costs and disbursements of this action, and any other damages permitted by law in an amount to be determined at trial.

### AS AND FOR A SECOND CAUSE OF ACTION
*(New York State Human Rights Law, Executive Law § 290 et seq.)*
(Disability Discrimination and Failure to Accommodate)

85.     Plaintiff repeats and realleges all prior allegations.

86.     The NYSHRL requires a covered employer to engage in an interactive process with disabled employees and to provide disabled employees with reasonable accommodations.

87.     At all relevant times herein, Plaintiff had a disability as defined by the NYSHRL.

88.     At all relevant times herein, Defendant had notice and was aware of Plaintiff's disability.

89.     Defendant failed to engage in a good faith interactive process with Plaintiff, denied her reasonable accommodations, and discriminated against Plaintiff because of her known disability, including but not limited to terminating her employment based on her disability.

90.     Defendant subjected Plaintiff to adverse employment actions to which non-disabled employees were not subjected.

91.     As a direct and proximate result of Defendant's discrimination against Plaintiff and failure to provide reasonable accommodations, Plaintiff has suffered and continues to suffer substantial losses, including loss of past and future earnings and other employment benefits.

92.     As a direct and proximate result of Defendant's discrimination against Plaintiff and failure to provide reasonable accommodations, Plaintiff has suffered emotional distress, pain, and suffering.

93.     Judgment should be entered in favor of Plaintiff and against Defendant on the Second Cause of Action for all compensatory, emotional, liquidated, and punitive damages, if applicable, along with lost pay, front pay, reasonable attorneys' fees, the costs and disbursements of this action, and any other damages permitted by law in an amount to be determined at trial.

### AS AND FOR A THIRD CAUSE OF ACTION
*(New York City Human Rights Law, N.Y.C. Administrative Code Title 8)*
(Disability Discrimination and Failure to Accommodate)

94.     Plaintiff repeats and realleges all prior allegations.

95.     The NYCHRL requires a covered employer to engage in an interactive process with disabled employees and provide disabled employees with reasonable accommodations.

96.     At all relevant times herein, Plaintiff had a disability as defined by the NYCHRL.

97.     At all relevant times herein, Defendant had notice and was aware of Plaintiff's disability.

98.     Defendant failed to engage in a good faith interactive process with Plaintiff, denied her reasonable accommodations, and discriminated against Plaintiff because of her known disability, including but not limited to terminating her employment based on her disability.

99.     Defendant subjected Plaintiff to adverse employment actions to which non-disabled employees were not subjected.

100.    As a direct and proximate result of Defendant's discrimination against Plaintiff and failure to provide reasonable accommodations, Plaintiff has suffered and continues to suffer substantial losses, including loss of past and future earnings and other employment benefits.

11

101.    As a direct and proximate result of Defendant's discrimination against Plaintiff and failure to provide reasonable accommodations, Plaintiff has suffered emotional distress, pain, and suffering.

102.    Judgment should be entered in favor of Plaintiff and against Defendant on the Third Cause of Action for all compensatory, emotional, liquidated, and punitive damages, if applicable, along with lost pay, front pay, reasonable attorneys' fees, the costs and disbursements of this action, and any other damages permitted by law in an amount to be determined at trial.

**AS AND FOR A FOURTH CAUSE OF ACTION**
*(Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.)*
(Race Discrimination)

103.    Plaintiff repeats and realleges all prior allegations.

104.    Title VII prohibits employers from discriminating against employees with respect to their compensation, terms, conditions, or privileges of employment because of such individual's race.

105.    Plaintiff is a member of a racially protected class and worked to protect and help other individuals who were members of racially protected classes.

106.    Plaintiff was qualified for the position in which she was employed.

107.    Defendant subjected Plaintiff to adverse employment actions, including but not limited to, refusal to provide reasonable accommodations and termination, because of Plaintiff's race.

108.    Similarly situated employees outside Plaintiff's protected class were granted reasonable accommodations that Plaintiff was not.

109.    Plaintiff's termination was motivated by her race and her work to protect and help other individuals who were members of racially protected classes.

110.    Defendant's actions were willful, knowing, and intentional, and were taken with reckless disregard for Plaintiff's federally protected rights.

111.    Defendants did not have a legitimate, non-discriminatory reason for not granting Plaintiff's reasonable accommodation requests and terminating Plaintiff's employment.

112.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer lost wages and benefits, emotional distress, humiliation, pain and suffering, and other consequential damages.

113.    Judgment should be entered in favor of Plaintiff and against Defendant on the Fourth Cause of Action for all compensatory, emotional, liquidated, and punitive damages, if applicable, along with lost pay, front pay, reasonable attorneys' fees, the costs and disbursements of this action, and any other damages permitted by law in an amount to be determined at trial.

## AS AND FOR A FIFTH CAUSE OF ACTION
*(New York State Human Rights Law, N.Y. Exec. Law § 296)*
(Race Discrimination)

114.    Plaintiff repeats and realleges all prior allegations.

115.    New York Executive Law § 296 *et seq.* prohibits discrimination on the basis of race.

116.    Plaintiff is a member of a racially protected class and worked to protect and help other individuals who were members of racially protected classes.

117.    Plaintiff was qualified for the position in which she was employed.

118.    Defendant subjected Plaintiff to adverse employment actions, including but not limited to, refusal to provide reasonable accommodations and termination, because of Plaintiff's race.

119.    Similarly situated employees outside Plaintiff's protected class were granted reasonable accommodations that Plaintiff was not.

120.    Plaintiff's termination was motivated by her race and her work to protect and help other individuals who were members of racially protected classes.

121.    Defendants did not have a legitimate, non-discriminatory reason for not granting Plaintiff's reasonable accommodation requests and terminating Plaintiff's employment.

122.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer lost wages and benefits, emotional distress, humiliation, pain and suffering, and other consequential damages.

123.    Judgment should be entered in favor of Plaintiff and against Defendant on the Fifth Cause of Action for all compensatory, emotional, liquidated, and punitive damages, if applicable, along with lost pay, front pay, reasonable attorneys' fees, the costs and disbursements of this action, and any other damages permitted by law in an amount to be determined at trial.

## AS AND FOR A SIXTH CAUSE OF ACTION
*(New York City Human Rights Law, Administrative Code of City of N.Y. § 8–107 et seq.)*
(Race Discrimination)

124.    Plaintiff repeats and realleges all prior allegations.

125.    New York City Administrative Code § 8-107(1)(a) prohibits discrimination on the basis of race.

126.    Plaintiff is a member of a racially protected class and worked to protect and help other individuals who were members of racially protected classes.

127.    Defendant treated Plaintiff less favorably than similarly situated employees outside Plaintiff's protected class.

128.    Plaintiff's termination was motivated, at least in part, by her race and her work to protect other individuals who were members of racially protected classes.

129.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer lost wages and benefits, emotional distress, humiliation, pain and suffering, and other consequential damages.

130.    Judgment should be entered in favor of Plaintiff and against Defendant on the Sixth Cause of Action for all compensatory, emotional, liquidated, and punitive damages, if applicable, along with lost pay, front pay, reasonable attorneys' fees, the costs and disbursements of this action, and any other damages permitted by law in an amount to be determined at trial.

## AS AND FOR A SEVENTH CAUSE OF ACTION
*(Americans with Disabilities Act of 1990, 42 U.S.C § 12101 et seq.)*
*(Retaliation)*

131.    Plaintiff repeats and realleges all prior allegations.

132.    The ADA prohibits covered employers from retaliating against a qualified employee with a disability when they make requests for reasonable accommodations or otherwise assert their rights under the ADA.

133.    Defendant retaliated against Plaintiff in violation of the Americans with Disabilities Act of 1990, 42 U.S.C § 12101 *et seq*.

134.    As a direct and proximate result of Defendant's retaliation against Plaintiff, she has suffered and continues to suffer substantial losses, including loss of past and future earnings and other employment benefits.

135.    As a direct and proximate result of Defendant's retaliation against Plaintiff, Plaintiff has suffered emotional distress, pain, and suffering.

136.    Judgment should be entered in favor of Plaintiff and against Defendant on the Seventh Cause of Action for all compensatory, emotional, liquidated, and punitive damages, if applicable, along with lost pay, front pay, reasonable attorneys' fees, the costs and disbursements of this action, and any other damages permitted by law in an amount to be determined at trial.

## AS AND FOR AN EIGHTH CAUSE OF ACTION
*(New York State Human Rights Law, Executive Law § 290 et seq.)*
(Retaliation)

137.    Plaintiff repeats and realleges all prior allegations.

138.    The NYSHRL prohibits covered employers from retaliating against a qualified employee with a disability when they make requests for reasonable accommodations or otherwise assert their rights under the NYSHRL.

139.    Defendant retaliated against Plaintiff in violation of the NYSHRL.

140.    As a direct and proximate result of Defendant's retaliation against Plaintiff, she has suffered and continues to suffer substantial losses, including loss of past and future earnings and other employment benefits.

141.    As a direct and proximate result of Defendant's retaliation against Plaintiff, Plaintiff has suffered emotional distress, pain, and suffering.

142.    Judgment should be entered in favor of Plaintiff and against Defendant on the Eight Cause of Action for all compensatory, emotional, liquidated, and punitive damages, if applicable, along with lost pay, front pay, reasonable attorneys' fees, the costs and disbursements of this action, and any other damages permitted by law in an amount to be determined at trial.

## AS AND FOR A NINTH CAUSE OF ACTION
*(New York City Human Rights Law, Administrative Code of City of N.Y. § 8–107 et seq.)*
(Retaliation)

143.    Plaintiff repeats and realleges all prior allegations.

144.    The NYCHRL prohibits covered employers from retaliating against a qualified employee with a disability when they make requests for reasonable accommodations or otherwise assert their rights under the NYCHRL.

145.    Defendant retaliated against Plaintiff in violation of the NYCHRL.

146.    As a direct and proximate result of Defendant's retaliation against Plaintiff, she has suffered and continues to suffer substantial losses, including loss of past and future earnings and other employment benefits.

147.    As a direct and proximate result of Defendant's retaliation against Plaintiff, Plaintiff has suffered emotional distress, pain, and suffering.

148.    Judgment should be entered in favor of Plaintiff and against Defendant on the Ninth Cause of Action for all compensatory, emotional, liquidated, and punitive damages, if applicable, along with lost pay, front pay, reasonable attorneys' fees, the costs and disbursements of this action, and any other damages permitted by law in an amount to be determined at trial.

WHEREFORE, Plaintiff prays for relief as follows:

a)    on the First Cause of Action on behalf of Plaintiff for compensatory, emotional, liquidated, and punitive damages, if applicable, along with lost pay, front pay, reasonable attorneys' fees, the costs and disbursements of this action, and any other damages permitted by law in an amount to be determined at trial.;

b)    on the Second Cause of Action on behalf of Plaintiff for all compensatory, emotional, liquidated, and punitive damages, if applicable, along with lost pay, front pay, reasonable attorneys' fees, the costs and disbursements of this action, and any other damages permitted by law in an amount to be determined at trial;

c) on the Third Cause of Action on behalf of Plaintiff for all compensatory, emotional, liquidated, and punitive damages, if applicable, along with lost pay, front pay, reasonable attorneys' fees, the costs and disbursements of this action, and any other damages permitted by law in an amount to be determined at trial;

d) on the Fourth Cause of Action on behalf of Plaintiff for compensatory, emotional, liquidated, and punitive damages, if applicable, along with lost pay, front pay, reasonable attorneys' fees, the costs and disbursements of this action, and any other damages permitted by law in an amount to be determined at trial.;

e) on the Fifth Cause of Action on behalf of Plaintiff for compensatory, emotional, liquidated, and punitive damages, if applicable, along with lost pay, front pay, reasonable attorneys' fees, the costs and disbursements of this action, and any other damages permitted by law in an amount to be determined at trial.;

f) on the Sixth Cause of Action on behalf of Plaintiff for compensatory, emotional, liquidated, and punitive damages, if applicable, along with lost pay, front pay, reasonable attorneys' fees, the costs and disbursements of this action, and any other damages permitted by law in an amount to be determined at trial.;

g) on the Seventh Cause of Action on behalf of Plaintiff for compensatory, emotional, liquidated, and punitive damages, if applicable, along with lost pay, front pay, reasonable attorneys' fees, the costs and disbursements of this action, and any other damages permitted by law in an amount to be determined at trial.;

h) on the Eigth Cause of Action on behalf of Plaintiff for compensatory, emotional, liquidated, and punitive damages, if applicable, along with lost pay, front pay,

reasonable attorneys' fees, the costs and disbursements of this action, and any other

damages permitted by law in an amount to be determined at trial.;

i)    on the Ninth Cause of Action on behalf of Plaintiff for compensatory, emotional,

liquidated, and punitive damages, if applicable, along with lost pay, front pay,

reasonable attorneys' fees, the costs and disbursements of this action, and any other

damages permitted by law in an amount to be determined at trial.;

j)    interest; and

k)    such other and further relief as is just and proper.


Dated: New York, New York
       April 25, 2025


                                            /s/ Jarret Bodo
                                            Jarret Bodo
                                            KATZ MELINGER PLLC
                                            370 Lexington Avenue, Suite 1512
                                            New York, New York 10017
                                            T: (212) 460-0047
                                            F: (212) 428-6811
                                            jtrbodo@katzmelinger.com
                                            Attorneys for Plaintiffs

EXHIBIT 1

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

New Orleans Field Office
500 Poydras Street, Suite809
New Orleans, LA 70130
(504) 635-2531
Website: www.eeoc.gov

## <u>DETERMINATION AND NOTICE OF RIGHTS</u>
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 01/27/2025

**To:** Ms. Antoinette Grant
   1335 East 38th Street, Brooklyn, NY 11234
Charge No: 520-2024-07614

EEOC Representative and email:    KORY FASCIO
                                 Investigator
                                 kory.fascio@eeoc.gov

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

Digitally Signed By:Michael Kirkland
01/27/2025

Michael Kirkland
Director

**Cc:**

Kimberly Kalmanson Esq.
Kalmanson Cohen PLLC
165 Broadway 23rd Floor
New York, NY 10006


Please retain this notice for your records.